## CHARLESTON

### BOYLES v. WHEELING TRACTION CO.

Submitted June 10, 1911. Decided November 19, 1912.

STREET RAILROADS—*Injury to Traveler—Contributory Negligence.*

It is negligence to drive in the darkness of the night closely along or on the track of an interurban railway that occupies part of the highway and on which the running of cars at any moment must reasonably be anticipated, when there is ample width of road to drive clear of it; and where one guilty of such negligence is overtaken by a car, handled with reasonable care in the emergency, and is injured thereby, he can not recover.

Error to Circuit Court, Marshall County.

Action by C. W. Boyles against the Wheeling Traction Company.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*D. B. Evans,* for plaintiff in error.

*Erskine & Allison,* for defendant in error.

Robinson, Judge:

The jury found a verdict for plaintiff, the court set aside the verdict and awarded a new trial, and plaintiff thereupon prosecuted this writ of error.   He demands that the order disturbing the verdict be reversed and that judgment in his favor be here entered.

The action is one seeking damages for injuries to a wagon, harness, and horse belonging to plaintiff.   Plaintiff's team, in charge of a driver, started from McMechen to Moundsville on a dark, foggy night in October.   On one side of the public road where the injury occurred is the track of the defendant's interurban electric railway line.   The team was traveling so near to the track that a car traveling in the same direction struck the hub of the front wheel of the wagon and the side of the off horse.   The ribs and the spine of the horse were broken so that it died.   The evidence shows that the horse was not directly on the track but so near that the car could not pass without striking it.   It also conclusively appears that the roadway was of ample width for the team to have been kept clear of the railway.   Further, it conclusively appears that the car, lighted inside and carrying an ordinary head light, could have been seen for such a distance that there was ample time for the driver to avoid all proximity to the railway as the car was approaching.

We do not hesitate to hold from the facts and circumstances of the case, that the person in charge of the team was so negligent in not avoiding proximity to the car line on this dark night as to warrant a setting aside of the verdict.   Indeed as to whether the driver of the team at the time of the accident was at all with it, the evidence is conflicting.   But, assuming that the driver was on the wagon as he says he was, we find in the case that which denies a verdict for plaintiff.   The driver, as the representative of plaintiff, could not put all the obligation to

protect the team on those in charge of the car. Upon the whole, they seem to have exercised reasonable care under all the circumstances. Plaintiff does not even undertake to show that they could have stopped after discovering the team in time to avoid the injury. It conclusively appears that the driver was negligent—that reasonable care on his part would have prevented the injury.

This case is not the ordinary one of a street car overtaking a team in broad daylight or in the blaze of street lights. All the relative circumstances must be considered. The night was dark and foggy. Cars were wont to run along this highway at intervals of twenty minutes. The driver knew these things. He could not anticipate that the motorman would be certain to see the team in the darkness and so approach it as to be able to stop before striking it. In the darkness it may not always be possible to do so, even in the exercise of the highest care. While the driver had the right to assume that the motorman would look out for persons on the track, still the motorman had the same right to assume that the driver would keep away from the track where there was room to do so. The operation of interurban lines through long stretches of country not crowded with travel can not be held down to the slow speed necessary to guard absolutely against the carelessness or caprice of travelers. It is enough to enjoin on the operators the exercise of reasonable and ordinary care. And that reasonable and ordinary care must be judged in a measure by what they reasonably have the right to anticipate from others. Surely the motorman could reasonably make speed at a place where he naturally had the right to anticipate that travelers, because of the width of the road and out of greater prudence on account of the darkness and dangers of the night, would not come on the track. All that which the driver knew, or must have known from the facts and circumstances proved, forbade him in prudence from driving near the car track when it was not absolutely necessary to do so and when he might reasonably expect cars to approach him in the darkness and fail to see him in time to stop. The circumstances were such as to enjoin on him at least as much prudence to keep out of the way of the car as those circumstances enjoined on the motorman prudence to look out for persons on the track. True, the team had the right to be on the highway; so had the car. And because

the car had the right to run there in the darkness and its speed and purposes were superior to the team, the relative duty of the driver was to look out for the car and prepare as well as he could for its approach.  No prudent man would have carelessly and unnecessarily driven along in proximity to the car track, and taken chances on the motorman finding him there in the darkness and by some manipulation of the heavy car protecting his team from harm.  Since both the team and the car had rights on the highway, relative duties devolved on each of them, to be judged by the circumstances of the case and the difference in the modes and the purposes of the travel of each.  The duty of the driver of the team was to keep away from the track at this point, to anticipate the coming of the car, and to be prepared for the car to approach rapidly and hasten on before him as it had the right to do.  The undeniable circumstances prove that he was so derelict in the matter of this duty as to have caused the injury himself.

It may be said that the motorman should anticipate that persons traveling the highway in the darkness will not be able to know whether they are near the track and that he should therefore provide against injury to such persons.  But in view of the character and purposes of interurban car travel, it would be going far to say that the motorman must observe a higher duty to such travelers than we would require of themselves.  Consistent with the situation of the motorman and the character of the travel he is engaged in, it is his duty to look out for persons who have strayed on the track.  At the same time such persons must be charged with the reciprocal duty to guard themselves by not getting on the track where it is unnecessary to do so.  Indeed, it would seem that their duty to keep clear of the track is a stricter one than the duty of the motorman on the other hand; for they can more safely protect themselves by simply keeping away than he can protect them by the management of a rapid, ponderous instrument when they do not keep away.  Reason demands that travelers keep away from the risk of a swiftly moving and dangerous car when it is easier and certainly safer for them to do so than it is easy and certain for the motorman to protect them.  Besides, the consideration that travel on interurban cars is that of the general public must weigh in a comparison of the relative rights and duties of the car company with those of the individual traveler.  Certainly the public should not be held up to af-

ford that protection from injury to an individual which he can readily and more surely give himself merely by the exercise of ordinary prudence. Why should we not require the traveler to know when he himself is on the track as well as require the motorman to know when the traveler is there? If the motorman must have a head light, why should not the traveler be required to have a lantern?

It is submitted that there is a jury question as to whether the motorman was giving warning of the coming of the car. We can not in reason hold that the motorman of an interurban car running in the darkness must continually sound the gong or blow the whistle. He must certainly do that at crossings, in narrow places, and when he observes persons in danger. But he can not do that all the time. It is not reasonable to require warning at places where it is not to be anticipated that travelers will risk danger. In such places, if a traveler tempts danger, he must look out and warn himself. He can ordinarily see a lighted car coming in the darkness for a greater distance than the motorman can see him by the head light. In this case it is undeniably shown that the driver could have seen the car a long distance if he had looked, and that the motorman could not see him until it was too late.

Though it might be found that defendant was negligent, still under the evidence as presented at the trial plaintiff could not in law recover. "One who, through the mere negligence of another, suffers an injury which would not have happened but for his own or his agent's wrongful act or want of ordinary care proximately contributing thereto, cannot recover at common law any compensation for such injury, unless its more proximate cause is the omission of the other party, after having notice of the danger to use due care to prevent injury." 1 Sherman & Redfield on Negligence, sec. 61. In other words: "The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligene of his opponent, is considered solely responsible." Quarterly Law Review, Vol. II., page 507.

The court did not err in setting aside the verdict. The order in that behalf will be affirmed and the action remanded.

*Affirmed.*