# CHARLESTON.

## MITCHELL *v.* U. S. COAL & .COKE CO:

### Decided May 10, 1910.'

1. MASTER AND SERVANT—*Injury to Servant—Safe Appliances.*

    It is the duty of the master to furnish reasonably safe appliances in and about the working place of his servants. This duty is non-assignable.

2. SAME—*Injuries to Servant—Dangerous Appliances.*

    An electric wire used on a motor car to carry the electric current from the overhead trolley wire to the machinery of the motor car, on which the insulation is allowed to become so broken, or defective, as to permit the naked wire to come in contact, either with the metal top of the circuit breaker, or with the body of a servant whose duties are such as to require him to work on, and about, such motor car, is not a reasonably safe appliance.

3. SAME—*Injuries to Servant—Defective Appliances.*

    The master is liable if a servant who has no knowledge of such defective appliance is injured, or killed, thereby.

4. NEW TRIAL—*Sufficiency of Evidence.*

    When the plaintiff's evidence is such that the court should not sustain defendant's motion to exclude it, it is error to set aside a verdict found for plaintiff.

Error to Circuit Court, McDowell County.

Action by G. C. Mitchell, administrator, against the United States Coal & Coke Company. Verdict for plaintiff. From an order setting it aside, he brings error.

*Reversed, and Judgment for Plaintiff.*

*Cook & Howard,* for plaintiff in error.

*Anderson, Strother & Hughes,* for defendant in error.

WILLIAMS, JUDGE:

Writ of error to an order of the circuit court of McDowell county setting aside a verdict rendered in favor of plaintiff.

Lawrence Mitchell, a boy seventeen years of age, was employed as brakeman and trapper in defendant's coal mine in McDowell county. His duties were to brake the cars which were hauled in and out of the mine to the tipple by means of an electric motor, and to open and close the trap doors across the entry. When the cars were going up grade and it was not necessary to apply the brakes, his duty required him to ride on the motor in order to be in position to open the doors to permit the passage of the motor and cars. He was riding on the hind end of the motor by the side of the motorman on the 6th of May, 1907, when he received a severe electric shock which caused him to fall backward off the motor, and to be crushed to death by the passing cars. His administrator brought an action against defendant for damages for negligently causing the death, and on the 3d of March, 1908, recovered a verdict for $1,200. The court set it aside and granted the defendant a new trial, by order made October 1, 1908. To this order a writ of error was awarded by this Court. Plaintiff insists that the court erred. This depends upon whether or not there is sufficient evidence to prove the negligence of defendant, as the proximate cause of the death. Defendant offered no evidence, and relies wholly upon the alleged failure of plaintiff's evidence to establish negligence. Ed Wolfe, the motorman, is the only eye witness to the fatal accident who testified at the trial. Mr. C. Reedy, the mine foreman, was sitting on the front end of the motor at the time the accident happened, but his testimony was not taken.

The proof shows that the electric current used to operate the

motor was conducted to the machinery of the motor car by means of an insulated wire on the trolley pole, which connected with the trolley wire over head. Wolfe says the rubber insulation on this wire was broken on the top side, and also that the rubber insulator that 'went over the circuit breaker was burnt from the circuit breaker; that at a point near where the wire enters the circuit breaker on the motor it was not insulated; and that two days before the accident occurred he called the attention of Mr. Sharp, the defendant's electrician, to this defective insulation. Mr. Sharp was dead at the time of the trial. It, therefore, does not appear whether he considered the insulation to be safe, or not. Plaintiff's theory is that this defective insulation permitted the naked wire to come in contact with the metal, and thus to charge the whole motor car so as to shock deceased and cause him to fall off the motor; or, that his body, in some way, came in contact 'with the exposed wire, and thus caused him to receive the shock. That the electric shock caused him to fall is not denied. The defendant's theory is that the shock resulted from what is known by motor-men and electricians as a "sand-ground." Sand is sometimes applied to the track, when going up ·grade, to prevent the wheels of the motor from slipping. It is a non-conductor of electricity; and if there is a sufficient quantity applied to prevent the wheels of the motor from coming in contact with the rails, the circuit will be thereby broken. This causes what is called a sand-ground. If a sand-ground occurs, and the current is communicated to the motor-car by means of some other connection with the rails than by its own wheels, the entire motor-car will become charged, and is' liable to produce a shock to any one who happens to be on it. The testimony of the motor-man is, that young Mitchell·was sitting on the circuit breaker with one hand resting on the front end of the metal car next to the motor, and the other upon the motorman's shoulder; that he had been sitting in this position for a minute, or such time, while they were drifting down an incline, and that when they reached the bottom of the swag, and started up grade, he (Wolfe) opened the trolley, and immediately young Mitchell fell backward off the motor. It is insisted that, 'while the motor was sand-grounded, Mitchell's body formed a short circuit by means of his hand resting on the metal car behind the motor;

that the wheels of the car on which his hand rested communicated the current to the rails. But this is only a theory. There is no evidence that a sand-ground actually did occur. The evidence only shows that the shock might have resulted in such manner. But we fail to see why a short circuit would not have been formed by the coupling device between the car and the motor as well as by Mitchell's hand being on the rear car. The evidence is that his hands were gloved. It would, therefore, seem that the car coupling would be a much better conductor of electricity than Mitchell's gloved hand. The jury were justified in concluding that his body may not have caused the short circuit which gave him the shock. The presentation of defendant's theory may have occasioned some doubt in the minds of the jury as to what actually caused the short circuit. They may have doubted whether it was the defective insulation of the wire at the circuit breaker, or a sand-ground, that caused the shock; still it was their province to resolve this doubt. It is clearly a jury question. It is both proven, and virtually admitted, that the shock caused the boy to fall off the motor, and there is evidence which tends strongly to prove that the shock was caused by the defendant's negligence in not keeping its wire and circuit breaker properly insulated. While the evidence does not amount to absolutely certain proof, it is sufficient, nevertheless, to warrant a verdict for plaintiff. *Carrico* v. *R. R. Co.,* 35 W. Va. 389; *Powell* v. *Love,* 36 W. Va. 96. These cases were decided upon a motion to exclude evidence, but the same value is given to such evidence whether on motion to exclude, or on a motion to set aside a verdict. If there is sufficient evidence to permit a case to go to the jury, it is also sufficient to support a verdict, if one should be found on it, and the court will not be warranted in setting it aside, simply because it may not have found with the jury. This is a corollary to the rule recently reviewed and affirmed in the case of *Butcher* v. *Sommerville,* decided by this Court, 67 W. Va. 261 (67 S. E. 726), that the court is not bound to submit a case to the jury when the evidence is so slight that it would not support a verdict, if one should be found on it. They were clearly warranted, by the facts proven, to infer that the defective insulation of the wire and of the circuit breaker was the proximate cause of Mitchell's death. It is insisted that he was not

riding in his proper place. But there is no evidence that he was forbidden, by any rule of the defendant company, to ride on the rear end of the motor, or that he was instructed by any one having authority over him not to ride there. Neither does it appear that, if there had been proper insulation, it would have been any more dangerous to ride on the rear end of the motor than it was to ride on the front end.. It is true the motorman told him it was dangerous to ride on the rear end. But he did not tell him why it was so, nor point out to him any particular element of danger. It was very natural for the boy to suppose that he encountered no more danger there than the motorman himself was exposed to. He had only been employed in this capacity for about three weeks. He had ridden in this same position frequently, and no previous accident had occurred. The motorman had told him only once that the rear end was a dangerous place on which to ride. He may have thought the motorman meant, by this warning, that he would be more liable to fall off, if he occupied that position, and he may not have appreciated that he was in any danger from the electric wire; neither do we see how he could have been in any danger from the wire, provided it was insulated. If the defendant failed to keep the wire properly insulated at those places where its employees were liable to come in contact with it in the discharge of their duty, it was guilty of negligence, in that it did not provide reasonably safe appliances in, and about, the place where its servants were required to labor. The master's duty in this regard is not assignable. The defendant could not entrust the keeping of its electric appliances in proper condition to its electrician, or mining boss, so as to escape liability for injury to its servant   *N. & W. R. R. Co.* v. *Ampey,* 93 Va. 108; *Richmond Locomotive Works* v. *Ford,* 94 Va. 627; *Lane Bros. & Co.* v. *Bauserman,* 103 Va. 146.

"If a master is guilty of negligence in failing to procure suitable appliances and machinery for carrying on his business, and injuries result therefrom to his servant, he must respond in damages." *Humphreys* v. *Newport News & M. V. Co.,* 33 W. Va. 135; *Giebel* v. *Collins Co.,* 54 W. Va. 518.

Young Mitchell was not guilty of contributory negligence in occupying a position on the circuit breaker, unless he knew of the uninsulated condition of the wire, and there is no evidence

that he knew of it. *Thomas* v. *Electrical Co.*, 54 W. Va. 395, and authorities cited on pages 405 and 406 of the opinion.

"It is manifest that a servant can not be deemed to have been in fault for the reason that he failed to take precautions which he did not know to be necessary for his safety." 1 Labatt on Master and Servant, section 319. This doctrine applies as well to Mitchell's having his hand on the car next to the motor, as it does to his sitting on the rear end of the motor.

It follows, from what we have said, that the circuit court erred in setting aside the verdict and in granting the defendant a new trial. Therefore, the order made on the 1st of October, 1908, will be reversed, and this Court will render judgment on the verdict for the plaintiff.

*Reversed, and Judgment for Plaintiff.*