# CHARLESTON

CROCKETT, ADM'R. v. BLACK WOLF C. & C. CO.

Submitted November 11, 1914.    Decided December 15, 1914.

1. MASTER AND SERVANT—*Coal Mine Employes—Immunity of Employees—Foreman— Construction of Statute.*

    The immunity of employers of labor in coal mines, given by the statute providing for the appointment of mine foremen and proscribing their duties, is limited to the duties so imposed upon the mine foreman in express terms or by clear implication arising out of the terms.   (p. 328).

2. SAME—*Mine Employees—Immunity of Employers—Employment of Foreman—Safe Appliances.*

    It does not extend generally to omission or failure to exercise reasonable care and diligence to provide and maintain suitable and safe machinery, tools and appliance for use by the employees as instrumentalities in the performance of their duties.   (p. 329).

3. SAME—*Injury to Mine Employe—Liability of Employer.*

    For an injury to a motorman in a coal mine, while in the line of his duty, by an improperly attached electrical trolley wire, the de-

fect in which could have been discovered and remedied by the exercise of such care and diligence, the employer is liable. (p. 329).

4. SAME—*Injury to Servant—Defective Instrumentalities—Reasonable Time to Discover and Repair—Question for Jury.*

Whether, in such case, a period of sixteen or eighteen hours, beginning in the evening and running through the night and into the next day, is sufficient for discovery and repair, is a question proper for jury determination. (p. 329).

5. SAME—*Injury to Servant—Defective Instrumentalities—Proximate Cause—Question for Jury.*

So also is the question, whether the jumping of the trolley pole from the wire, occasioned by the defect, caused the injury, the wire having come into fatal contact with the motorman's body at the same time. (p. 329).

6. APPEAL AND ERROR—*Disposition of Cause—Pleadings.*

A verdict rendered in a trial in which the rulings of the court are free from error and sustained by sufficient evidence, will not be set aside for omission of necessary, but wholly separable and controling, matter for the declaration. In such case, the judgment will be reversed and the case remanded with leave to amend the declaration, and the verdict allowed to stand pending further proceedings in the trial court for judgment thereon, if the omitted matter is supplied by averment admitted or proved. (p. 331).

Error to Circuit Court, McDowell County.

Action by J. M. Crockett, administrator, etc., against the Black Wolf Coal & Coke Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded for limited new trial.*

*Anderson, Strother & Hughes* and *Strother, Taylor & Taylor,* for plaintiff in error.

*Stokes & Sale* and *Lawson Worrell,* for defendant in error.

POFFENBARGER, JUDGE:

The death for which recovery was had in this case, as one wrongfully occasioned by the defendant, resulted from the use of a trolley wire in the operation of an electric motor, after it had been detached from the hanger, by the breaking of a clip, and re-attached by a fellow servant of the decedent, in an unskilful and improper way, in consequence whereof the trolley jumped off at that point and the wire itself

coming into contact with the motorman, fatally shocked and burned him.

A basic question in the case is, whether the duty of maintenance of the safety of the wire, it having been properly installed in the first instance, was expressly or impliedly charged by law upon the mine foreman, so as to make his failure to report it to his employer and cause the break to be repaired, as in other cases falling within his province, negligence on his part and, therefore, that of a fellow servant for which the master is not liable. The necessity of entering upon several other inquiries suggested in argument will depend upon the result of the one just stated.

Before entering upon it, however, it is proper to say the sufficiency of the evidence of proper installation, subsequent defectiveness by reason of use and wear and causal connection between the defect and the injury, to warrant submission of these issues to the jury, is clear. As originally put up, the wire had been successfully operated for a good while. A fellow workman, a motorman in charge of another motor, testified that, on the evening preceding the accident, he had found the wire down at the place thereof, and had tied it up to the hanger, so as to enable him to proceed with his motor and the load it was pulling. He said the clip which had formerly held it in place had worn out or broken. As reattached by him, its condition was such as necessarily interrupted the contact of the trolley wheel and caused it to jump off. On the next morning, two motors attached to each other and drawing a string of coal cars, started into the mine. Murphy was operating the foremost one and the decedent the other. When they reached the place of the accident, Murphy's trolley pole jumped off, but did not injure him. Decedent's trolley pole, following at a distance of only five or six feet, did likewise and the vibrating wire caught him about the neck, with the unfortunate results stated. Against this positive and direct evidence as to the facts, nothing is relied upon except mere conjecture and surmise as to other modes of injury, consistent with requisite care on the part of the master, or contributory negligence on the part of the decedent.

The extensive use of electrical machinery and appliances

by unskilled persons, with comparative safety, constitutes a complete answer to the assertion of lack of legislative intent to place the care, maintenance and oversight thereof within the duty and province of the mine foreman, on account of its character. All dangerous parts are insulated and the method and necessity of insulation, in general, are well understood. Men of all degrees of literacy and illiteracy and intelligence and women and children make constant use of them. Electrically operated sewing-machines, washing-machines, irons, culinary implements, cleaners, vibrators and automobiles and other motors are everywhere in use by persons generally lacking in electrical learning and skill. Moreover, the mining statutes have been amended and re-enacted long since the use of electrical machines in the mines of this state became usual and common.

However, an affirmative answer to the question submitted has not beeen given by any decision of this court. On the contrary, some of them rather assume the duty of maintenance of safety of appliances and machinery of all kinds rests upon the mine operator, except in so far as it has been devolved upon the mine foreman in express terms or by fair implication. In *Mitchell* v. *Coal & Coke Co.*, 67 W. Va. 480, the company was held liable for an injury occasioned by defective insulation of a motor, not upon the theory of defective insulation at the time of installation in the mine, but generally. The evidence tended to prove adequate insulation at that time and subsequent defectiveness by reason of use. *Cheeks* v. *Virginia-Pocahontas Co.*, 82 S. E. 756, proceeds upon the same assumption. There the injury complained of was occasioned by a defective mine-car step. In neither of these cases, did the court enter upon any extensive inquiry as to the construction of the statute, but, in *Humphreys* v. *Raleigh C. & C. Co.*, 73 W. Va. 495, 80 S. E. 803, the following proposition was declared as the limitation upon the statutory duties and responsibility of the mine foreman: "The mine foreman statute of this state does not absolve the mine owner or operator from his common-law duty to exercise reasonable care to provide reasonably safe machinery, tools, and appliances for use in the mine, and make the mine a reasonably safe place for work, except in so far as the duty

is devolved upon the mine foreman, nor from liability for injury resulting to a servant in the mine from his failure to make such provision, or his provision of defective or unsafe appliances, or his failure of duty as to the safety of the mine as a place of work in those instances in which such duty is not cast upon the mine foreman.''

This view of the statute harmonizes with observations found in all the leading cases in which the master has been accorded immunity by virtue of the statute. Nearly all of them contain expressions of limitation of the mine-foreman's duties to those things in respect of which he is charged with duty by some terms found in the statute. *Williams* v. *Thacker C. & C. Co.,* 44 W. Va. 599; *Squilache* v. *Tidewater C. & C. Co.,* 64 W. Va. 337; *Bralley* v. *Tidewater C. & C. Co.,* 66 W. Va. 278; *Helliel* v. *Piney C. & C. Co.,* 70 W. Va. 45; *Peterson* v. *Collieries Co.,* 71 W. Va. 334; *May* v. *Davis C. & C. Co.,* 71 W. Va. 220. A consideration almost conclusively establishing the soundness of this construction is this: The statute transfers liability which the common law would impose upon the master, to the shoulders of the mine-foreman and abrogates the common law right of action of the injured servant against the master. The imposition of liability upon the mine-foreman is in derogation of his common law right of service without it, and the abrogation of the injured servant's right of action against the master is in derogation of his common law right as a citizen and employee. Hence, the statute ought not to, and cannot, consistently with the rules of construction, have effect beyond that clearly indicated by its terms. *Harrison* v. *Leach,* 4 W. Va. 383. Statutes are not always permitted to operate to the extent of the express terms used. *Reeves* v. *Ross,* 62 W. Va. 7; *Conley & Avis* v. *Coal & Coke Ry. Co.,* 67 W. Va. 129; *Bank* v. *Jacobs,* 74 W. Va. 525, 82 S. E. 320. Under no rule or principle, now recalled, can a statute dealing with rights of so substantial and high a nature have operation and effect beyond the scope indicated by the terms used.

A careful examination of the statute in question fails to disclose the use of any words therein indicative of intent to place the duty of inspection, oversight and repair of such mining machinery and appliances as those here involved upon

the mine foreman. In that connection, nothing is said of the fitness or safety of machines, tools and appliances, electrical or non-electrical, as instrumentalities in the hands of those using them. The wire in question was strung along the side of a haulway and some duties respecting the haulways and traveling ways are imposed upon the mine foreman. The statute says he shall "keep a careful watch over the ventilation apparatus and the airways, traveling ways, pumps and drainage; * * * * and shall see * * * * that all loose coal, slate and rock overhead * * * * along the haulways be removed or carefully secured so as to prevent danger to persons employed in such mines." It is his duty also to construct and keep open "refuge holes" along the haulways and provide a system of signals and conspicuous lights on the front and rear of every trip or train of cars, if the hauling is done by machinery. All of these duties have for their purpose the general safety of the mine for workmen in the use of the haulways in travel or work. In favor of persons so engaged, without actual use of the defective appliance in question, the duty of maintenance may have rested upon the mine foreman, but the statutory terms just quoted are not broad enough to fix it upon him, in respect to the servant making actual use of it as an appliance, in the discharge of the duty he was performing under his contract of employment. The wire was an implement used in his work, and nowhere does the statute say the mine foreman shall see that the miners or other employees are provided with safe or suitable tools and appliances. Hence, the duty of maintenance of the safety of the trolley wire for such purpose was not devolved upon him.

The period of time intervening between the breaking of the clip and the occurrence of the injury does not appear. Its defective condition was discovered the evening before the accident, by a fellow workman, but there is no proof as to when the break occurred. It may have taken place several hours, even days, earlier. Under the conclusion stated, there was a duty upon the master to inspect the wire and other similar machinery and appliances, as a matter of precaution for the safety of the decedent and other employees using them, and it had a period of about eighteen hours in which

to do so, after the defect is known to have existed. In view of the dangerous character of the instrument in question, the law requires the exercise of a high degree of care and diligence in the matter of inspection as well as other duties respecting it. Whether, in the light of all the circumstances, the company exercised reasonable care and diligence was a question for the jury, to say the least. *Chicago etc. Co.* v. *Delaney,* 48 S. E. 476; *Merritt* v. *Victoria Lumber Co.,* 35 S. 497; Labatt Master & Ser. 2nd Ed. pp. 2730, 2731 & 2801.

Although there was really no evidence of contributory negligence on the part of the decedent, the instructions given at the instance of the plaintiff, recognized it as a defense interposed, and accorded in all other respects with the principles and conclusions here stated. The phrase, ''reasonable care,'' used in each of them, is emphasized by the word ''all,'' and that is made a ground of exception to them, but it made no perceptible change of meaning, and could not have misled the jury. Defendant's instruction No. 6, refused by the court, was vitiated by its assumption of the existence of evidence tending to prove latency of the defect in the wire. There was no such evidence. Inspection would have readily disclosed either the break or the improper attachment.

The request for a direction to find a verdict for the defendant and the motion to set aside the verdict raise the same question, sufficiency of the evidence to sustain the verdict. That the connection of the wire with the hanger was improper and such as would inevitably throw the trolley pole off the wire is fully established. The trolley pole of the decedent's motor jumped off at that point and he thereupon instantly came in contact with the wire. Nobody could tell exactly what the causal connection between these occurrences, if any, was, but they apparently constituted a single inseparable transaction occasioned by the improper attachment. In our opinion, such a state of facts made an issue proper for jury determination.

Failure to allege the appointment and qualification of the plaintiff as administrator made the declaration bad on demurrer and the court erred in holding it sufficient. A *nunc pro tunc* order, entered since the writ of error was allowed, says this defect was not assigned as a ground of demurrer.

The order entered at the time is general and specifies no particular ground. Presumptively all were relied upon, whether argued or not. We have no rule declaring a waiver of grounds not assigned. The case does not fall within the principle of the Virginia cases relied upon, *U. S. Mineral Co.* v. *Camden,* 106 Va. 663; *Virginia etc. Co.* v. *Harris,* 103 Va., 708, and *Virginia Iron etc. Co.* v. *Roberts,* 103 Va. 661, in which the record disclosed assignment of grounds other than those asserted in the appellate court. Except in so far as it has been qualified by statute, the common law rule governs, and the case is not within the statutory limitation prescribed by sec. 29, ch. 125, serial sec. 4783, of the Code. Fortunately the rule applied in *Moss, Adm'r.* v. *Campbell's Creek R. Co.,* 75 W. Va. 62, 83 S. E. 721, will relieve from the serious consequences of the error.

The judgment will be reversed and the case remanded, with directions to permit an amendment of the declaration, and try the issue on the matter of the amendment, if any, render judgment on the general verdict, if no plea to such new matter shall be entered, or the verdict on such issue shall be for the plaintiff, and set aside the general verdict, if such issue shall be made and a special verdict for the defendant found.

*Reversed and remanded for limited new trial.*