## CHARLESTON.

GRAY, ADMR. v. POCAHONTAS CONSOLIDATED COLLIERIES CO.

Submitted May 6, 1915. Decided May 25, 1915.

1. MASTER AND SERVANT—*Employment of Infants—Negligence Per Se.*
   It is not negligence per se to employ an infant over fourteen years of age in a coal mine. (p. 312).

2. SAME—*Injury to Coal Mine Employe—Safe Appliances—Duty of Owner or Operator.*
   It is the non-assignable duty of the owner or operator of a coal mine, not of his mine foreman, to maintain his motor track, motor and other appliances with which his servants are required to work in a reasonably safe condition, and failing therein, the resulting injury to an employee constitutes actionable negligence. (p. 312).

3. SAME—*Death of Coal Mine Employe—Negligence—Questions for Jury.*
   The facts proven by the evidence in this case were such as to entitle the plaintiff to have the evidence go to the jury on the fact of negligence, and the issue of contributory negligence relied on by defendant. (p. 312).

Error to Circuit Court, McDowell County.

Action by B. Hampton Gray, administrator, etc., against the Pocahontas Consolidated Collieries Company. Judgment for defendant, and plaintiff brings error.

*Reversed, and new trial awarded.*

*Cook, Litz & Harman, Joseph M. Crockett* and *Sanders & Crockett,* for plaintiff in error.

*Anderson, Strother, Hughes & Curd,* for defendant in error.

MILLER, JUDGE:

This is an action on the case for the alleged wrongful death of Chester Cook, a boy seventeen years of age, while employed in defendant's coal mine, in McDowell County.

On the trial, after the plaintiff had introduced his evidence, the court, on motion of the defendant, struck out all of the plaintiff's evidence, and directed a verdict for defendant, which was accordingly returned by the jury, and from the judgment of nil capiat thereon plaintiff brings error.

The only question presented for decision, therefore, is, was the plaintiff's evidence sufficient to carry the case to the jury on the issues joined on the plea of not guilty.

The acts of negligence alleged and relied on as grounds of the action were, first, the employment of the deceased, a youthful servant, at a dangerous and hazardous work of braking on an electric motor train; second, in permitting defendant's track and switches in its mine, over which its electric motor and train were run, to become so defective and out of repair, as to cause derailment of the car, which resulted in the injury and death of decedent; third, failure to instruct and warn decedent of the dangers and hazards of his employment, due to the alleged defective and dangerous condition of said tracks and switches.

On the first proposition, the evidence tended to show that deceased had falsely represented his age at the time of his employment. It was conceded, however, and the proof establishes the fact, that he was but seventeen years of age. But our decisions say, construing the statute, that it is not negligence per se to employ a boy over fourteen years of age in a coal mine. Indeed, the statute permits such employment. See *Griffith* v. *American Coal Co.*, 75 W. Va. 686, 84 S. E. 621, and cases cited.

On the second proposition, *Crockett, Admr.* v. *Black Wolf Coal & Coke Co.*, 75 W. Va. 325, 83 S. E. 987, *Crockett* v. *Keystone Coal & Coke Co.*, 75 W. Va. 467, 84 S. E. 948, and *Jaggie* v. *Davis Colliery Co.*, 75 W. Va. 370, 84 S. E. 941, decide, construing the statute, that it is the duty of the mine operator and not of the mine foreman to maintain his motor tracks, motors, and appliances in a reasonably safe condition, and that negligence therein resulting in injury to an employee constitutes good ground of action for such injury.

The question then remains was the evidence in this case, relating to the fact of negligence, sufficient to have carried the case to the jury? In our opinion it was. We cannot detail all the evidence here, but some of the uncontroverted facts, which we think plaintiff was entitled to have submitted to the jury, along with other facts in the case, were, that the switch at the second left entry, about one hundred and fifty feet from the opening of the mine, and known as ''empty

branch'', and the track for some distance was practically immersed in water; that at this point the track on the main entry was on a curve and that the outside rail was elevated some four inches above the rail on the inside of the curve, when it should not have exceeded two inches; that the throwbar by which the switch was thrown open to let the empty cars in on the empty branch was not provided with a ball or weight, or other appliance to hold the switch in place; that the track at this point was in a swale or low place in the mine, some fourteen inches below the regular grade of the track, and that the track from this point ran up a steep or abrupt grade; that the deceased, who had been employed on the day of his injury and death as a brakeman, and on his third trip into the mine was found about two o'clock in the afternoon of that day lying on the ground some thirty feet from the switch, and between the main track and the track on the empty branch and near the rib of the mine, with a heavy mine prop lying across his back or neck, and in an unconscious condition, the same prop which had been standing in the mine near where he laid, to hold up the roof, and the prop at which brakemen were required to stand, after throwing the switch, until the empty cars being pushed on to the empty branch had cleared the main track, when they were required to go upon the cars and set the brakes; that just a few moments before deceased was found dying at his post, a motorman outside of the mine heard a rumbling in the mine as if caused by a wrecking of cars, and after sending his brakeman in the mine a short distance and receiving a signal to back the train and doing so, he then went into the mine where he found deceased in a dying condition. The cars were then back on the track. But there was evidence on the ground that one of the cars had been off the track and had struck the prop and caused it to fall on deceased. It was also shown that some twenty-five or thirty minutes afterwards, and after the motorman had pulled the empty train back on the track and past the switch at empty branch, the switch was found about half thrown; that when fully opened the needle point would stand away from the rail about three inches, but that when so examined it stood about an inch and a half, and the evidence tended to show that this condition

.of the switch might have been caused by pulling the derailed car back over the switch, or that its then condition was due to the alleged defective throw bar, and the alleged defective condition of the track at that point. And one of the witnesses, who had been night foreman in the same mine, swore, that several wrecks had occurred at that point while he was working there. While on cross-examination this witness said that this track was in as good condition as tracks of this kind are usually found in coal mines, yet he qualifies this statement with this exception, namely, that there was water over the rail and that there should have been some way to fasten that switch down, and that there was a sag in the track.

While the force of the testimony of plaintiff's witnesses, given in chief, was considerably modified on cross-examination, the facts above detailed were not materially changed or affected thereby, and while we must not be understood as expressing any opinion, on what conclusion should be drawn from the evidence by the jury, we are nevertheless of the opinion that the evidence was of that character that it should have been submitted to the jury on that fact of negligence; whether the negligence of defendant, if any, was the proximate cause of the death of decedent, or whether decedent's own negligence contributed thereto, so as to defeat the action.

We are of opinion, therefore, to reverse the judgment, and award the plaintiff a new trial.

*Reversed, and new trial awarded.*