# CHARLESTON.

BROGAN v. UNION TRACTION COMPANY.

Submitted September 14, 1915.    Decided October 5, 1915.

1. CARRIERS—*Passengers—Duty of Carrier—Care Required.*

    In executing their contracts with passengers carriers are bound to exercise the highest degree of care to avoid injuring them.    (p. 700).

2. SAME—*Death of Passenger—Declaration—Surplusage—Demurrer.*

    A declaration in an action against a carrier of passengers for the wrongful death of a passenger, which properly pleads the facts showing the relationship of passenger and carrier, is not bad on demurrer because it may charge a higher degree of care than is owed by carrier to passenger in executing its contract of carriage. All such matter should be treated as surplusage.    (p. 702).

3. EXECUTORS AND ADMINISTRATORS—*Action by Administrator—Declaration—Sufficiency.*

    A declaration by an administrator which fails to allege the appointment and qualification of the administrator is bad on demurrer.    (p. 702).

4. APPEAL AND ERROR—*Pleading—Waiver of Objection—Harmless Error.*

    And although plaintiff may have testified on the trial that he was such administrator, without objection on the part of defendant, the defect in the declaration can not, consistently with good practice, be treated as harmless error, and as waived by defendant.    (p. 702).

5. SAME—*Trial—Presumption on Appeal—Instructions.*

    Instructions to the jury should not be too general in their terms, but should be limited to the facts alleged and proven, but on writ of error, and in the absence of evidence to the contrary, and of

prejudice to the objecting party, this court will presume intelligence sufficient on the part of the jury to understand that such general instructions were to be limited to the facts in issue before them.   (p. 703).

6.  TRIAL—*Instructions—Definitions.*

An instruction to the jury is not bad because it fails to define such words as ''proper inspection'' employed therein, and referring to the duties of motorman and conductor on the car of an electric railway, in attempting to cross at grade the tracks of a steam railroad.   (p. 704).

7.  DEATH—*Measure of Damages—Instruction.*

Plaintiff's instruction number 5, the same as plaintiff's number 10, approved in *Yeater* v. *Jennings Oil Co.,* 75 W. Va. 346, relating to the measure of damages in cases of this kind, is re-affirmed.   (p. 705).

8.  CARRIERS—*Injury to Passenger—''Proximate Cause''—Instruction.*

The words ''proximate cause'' have a well defined meaning, as being the nearest or closest in place and time, and an instruction to the jury relating to the negligence of a carrier of passengers using these words is not bad because it omits to further define the meaning thereof.   (p. 705).

9.  APPEAL AND ERROR—*Negligence—Instructions—Harmless Error— ''Highest Degree of Care—''Utmost Degree of Care.''*

The words ''highest degree of care'' and ''utmost degree of care'' have substantially the same meaning, and it is not reversible error for a trial court to decline at the instance of one of the parties to tell the jury that ''highest degree of care'', employed in an instruction given at the instance of the other party, means ''utmost degree of care.''   (p. 706).

10.  TRIAL—*Verdict—Instructions—Deliberations of Jury.*

The rule of law requiring unanimity in the verdicts of juries means unanimity in the result or finality of such verdicts, and not in the successive steps leading to such results, and an instruction to the jury on the subject of such unanimity which might be misleading, and result in forestalling due and proper deliberations in the jury room or amount to an invitation to individual jurors to be obdurate and to resist the argument and reasonings of his associates in reaching a verdict, is properly rejected.   (p. 706).

11.  SAME—*Instructions—Evidence.*

An instruction to the jury assuming as true that which is contrary to human reason and experience, though there be some evidence tending to support the same, and which also fails to take into account other pertinent facts which the evidence tends to prove, is rightfully rejected.   (p. 707).

12.  CARRIERS—*Injury to Passenger—Question for Jury.*

Where, in such action, it is shown that a derailment switch of a street railway, near its intersection with a steam railroad, has been plugged up and no longer used by such railway, it is a question of fact for the jury, on the evidence, to say whether the abandonment of such switch constituted actionable negligence of the defendant, and resulted in the injuries complained of.  (p. 708).

13.  SAME—*Injury to Passengers—Negligence of Intervening Agency.*

A carrier of passengers can not excuse the slightest negligence on its part, resulting in injury to a passenger, by showing negligence of an intervening agency, contributing to or proximately causing the injury. It must be wholly free from negligence on its part.  (p. 709).

14.  TRIAL—*Special Interrogatories.*

Special interrogatories propounded to a jury, the answers to which, by the jury, would be inconclusive or immaterial, are properly rejected.  (p. 710).

Error to Circuit Court, Wetzel County.

Action by J. P. Brogan, administrator, etc., against the Union Traction Company.  Judgment for plaintiff, and defendant brings error.

*Reversed and remanded, for trial on single issue.*

*M. H. Willis* and *Robinson & Robinson,* for plaintiff in error.

*J. Glenn Snodgrass, M. R. Morris* and *A. C. Chapman,* for defendant in error.

MILLER, JUDGE:

To the judgment for plaintiff for fifty five hundred dollars,' damages for the death of Francis Brogan, plaintiff's intestate, defendant obtained the present writ of error.

The first point is that the court erred in overruling defendant's demurrer to the declaration and to each of the four counts thereof.  The main criticism, applicable to all four counts, is that a higher degree of duty, of carrier to passenger, is averred than is required by law, and that the alleged breaches of that duty are as broad as the duties charged.  The first count avers that it was the duty of defendant to safely carry the deceased; the second, that he was

to be safely carried; the third, as in the first, that it became
the duty of defendant to exercise due, proper and extra-
ordinary care in operating its passenger car; and the fourth
that it was defendant's duty to use due, proper and extra-
ordinary care that the said Brogan should be safely carried.
The position of counsel is that the duty of carrier to
passenger is to use ordinary care only.   While this may be
the measure of duty of railway companies to its servants and
to trespassers upon its tracks, as in *Gunn* v. *Ohio River R. Co.*,
36 W. Va. 165, 171; *Robinson* v. *City & Elm Grove Ry. Co.*, 71
W. Va. 423, 76 S. E. 851; *Boyles* v. *Wheeling Traction Co.*, 71
W. Va. 320, 76 S. E. 673, cited, this is not the measure of
duty of carrier to passenger.   It is argued that the degree of
duty averred in the declaration makes the carrier an insurer
of the lives of its passengers, a higher duty and responsibility
than that imposed by law.   But our decisions, in consonance
with the general rule of liability everywhere, are, that the
contract of a carrier is to carry its passengers safely, limited
only by that high degree of care which the law imposes upon
the carrier.   The averments of the first and second counts
must be so interpreted.   As to the third and fourth counts
we do not think they charge a higher degree of duty than
the law imposes.   "Extraordinary care" and the "highest
degree of care" are imposed.   One position of demurrant's
counsel, applied also to its instructions numbered 1 and 2,
rejected, is, that the "highest degree of care", or "extra-
ordinary care", are not required, but only the "utmost care"
of reasonably prudent and skillful persons.   But as we under-
stand the meaning of the words there is no difference in mean-
ing between "highest degree of care", "extraordinary care"
and "utmost care".   And our decisions we think hold carriers
to these high degrees of responsibility in executing their con-
tracts with passengers.   *Mannon* v. *Camden Interstate R. Co.*,
56 W. Va. 554, 49 S. E. 450; *Normile* v. *Wheeling Traction
Co.*, 57 W. Va. 132, 49 S. E. 1030; *Norfolk, etc., R. Co.* v.
*Birchfield*, 105 Va. 809, 822, 54 S. E. 879; *Turk* v. *Norfolk &
W. R. Co.*, 75 W. Va. 623, 84 S. E. 569; *Norfolk-Southern R.
Co.* v. *Tomlinson*, (Va.) 81 S. E. 89; *Washington A. & Mt. V.
Ry. Co.* v. *Trimyer*, 110 Va. 856, 67 S. E. 531; *Ind. & St. L.*

*R. R. Co.* v. *Horst*, 93 U. S. 291; *Fitch* v. *Mason C. & C. L. T. Co.*, 124 Iowa 665, 100 N. W. 618.

But assuming that the declaration does aver higher degrees of duty, and breaches of that duty, than the law imposes, the facts alleged showing the relationship of passenger and carrier, the duty of the one to the other, arises as matter of law, out of those facts, and the mere averment of a higher degree of duty and breach thereof than that relationship imposes upon the carrier does not vitiate the declaration, but such matter should be treated as surplusage. *Thomas* v. *Electrical Co.*, 54 W. Va. 395; *Jaeger* v. *City Ry. Co.*, 72 W. Va. 307.

The only other point of demurrer is the failure of the declaration to aver the appointment and qualification of the plaintiff as administrator. Of course, under our decisions, the declaration is faulty for this reason. But as we have recently decided, this error does not call immediately for a new trial on all the issues, but only for a reversal of the judgment, and a remand that the pleadings may be amended, and a separate issue made up and tried as to the appointment and qualification of the administrator. *Austin* v. *Calloway*, 73 W. Va. 231, 80 S. E. 361; *Crockett* v. *Black Wolf C. & C. Co.*, 75 W. Va. 325, 83 S. E. 987; *Moss* v. *Campbell's Creek R. R. Co.*, 75 W. Va. 62, 83 S. E. 721.

But it is urged by plaintiff's counsel that as evidence of the appointment and qualification of the administrator was admitted without objection on the trial in the court below, we should not reverse the judgment for this error, but treat it as harmless. The evidence referred to was not the record evidence, but the bare statement of the plaintiff that he was such administrator. We think, however, that the defendant had the right to stand on its demurrer to the declaration, and that it did not waive its rights by not objecting to the evidence of plaintiff.

On the next points of error, the admission and exclusion of certain evidence, we have carefully examined the record upon these points, and do not find any reversible error in the rulings of the court thereon. For the most part we think the evidence admitted and rejected was immaterial. It would

serve no good purpose, in our opinion, to detail this evidence or further consider the rulings of the court thereon.

The next points relate to the giving and refusing of instructions. Nine instructions were requested for plaintiff, and all, except number 7, were given as requested. Thirty instructions were proposed for the defendant, those numbered 3, 5, 7, 8, 10, 16, 19, 22, and 25, were given as requested; the remainder were rejected.

Plaintiff's first instruction, complained of, contains a general definition of negligence, not objected to; but it is contended that because following this definition it tells the jury in like general terms that if they find from the evidence that defendant failed to do that which an ordinarily prudent person would have done under the circumstances, or that it did something which an ordinarily prudent person would not have done under the circumstances, resulting in the death of plaintiff's intestate, plaintiff was entitled to recover, and does not in terms refer the same to the acts of negligence pleaded and proven, if any, the instruction is bad and misleading. We can see no virtue in this objection. Of course instructions must be confined to the acts of negligence alleged and proven, but must we not give the jury credit with enough intelligence to understand an instruction of this general character, and that it should be limited to the facts pleaded and proven? Besides, it should not be assumed that the court would admit evidence of acts of omission or commission not alleged, and the jury would certainly not be induced by such general instructions to go outside of the pleading and proof to find facts to which to apply them.

Instruction number 2, is complained of, because it propounds the proposition of highest degree of care required of carrier toward passenger. What we have said on this subject in connection with the demurrer to the declaration, we think fully answers this proposition.

Of instruction number 3, it is complained that it submitted to the jury the question whether or not those in charge of the car, on which the deceased was riding, performed their duty to look and listen for the approaching train on the Baltimore & Ohio Railroad, a fact proven by those officers as witnesses for the plaintiff, and not controverted. It is

argued that plaintiff was not entitled to submit this un-
controverted fact to the jury in this way. If the instruction
was erroneous for this reason it constituted harmless error not
calling for reversal.

Of instruction number 4, it is complained, that it submits
to the jury the question, whether the motorman and con-
ductor in charge of the defendant's car, when approaching
the parallel tracks of the Baltimore & Ohio Railroad "made
proper inspection" to ascertain whether said tracks were
clear, without defining to the jury the meaning of those
words, "proper inspection". Surely the jury could not have
been misled for want of definition of these words. They may
not have been the most appropriate words to apply to the
situation, but the jury would understand that they meant
nothing more than that the defendant's servants should do
what was necessary so as to make it reasonably safe to pass
over the tracks with the car in their charge. It is also
complained that the words "proper degree of care and watch-
fulness", required of the defendant's servants, to ascertain the
approach of the train on the Baltimore & Ohio Railroad
tracks, were not explained to the jury, so as to enable them to
comprehend the meaning of those words, and the application
thereof to the facts proven. The proper degree of care
and watchfulness, as defined by other instructions given,
meant the highest degree of care, consistent with human
reason and foresight under all the circumstances in the case,
and which is owed by carrier to a passenger. It is further
objected to this instruction, that by telling the jury, that if
they believed "that instead of exercising a reasonable degree
of care and caution and keeping an outlook and listening for
approaching trains", on the tracks of the Baltimore & Ohio
Railroad Company, "the said conductor and motorman ran
the said car over the first two of said tracks, and that on the
third one of said tracks the freight train of the said B. & O.
Railroad Company struck the said car of the said defendant",
and knocked it over upon and killed the decedent, "the de-
fendant was guilty of negligence", justifying a finding for
the plaintiff, the effect of it was to tell the jury, that the
running of the car over the tracks of the railway company in
the manner described was not the exercise of a reasonable

degree of care, and that the management of the car in the manner described was conclusive evidence of want of proper lookout and listening for the approaching train. While the language of the instruction may not be the best to express the meaning, we think the jury must clearly have understood it to mean, that if they believed the conductor and motorman ran the car onto the railroad tracks, without careful lookout, and without listening for the approaching train, ·defendant was guilty of the negligence imputed to it.

Plaintiff's instruction number 5, relating to the measure of damages, is identical with instruction number 10, approved in *Yeater* v. *Jennings Oil Co.*, 75 W. Va. 346, 84 .S. E. 904. In this case we followed the Supreme Court of Virginia, in a number of decisions cited, the Virginia statute on the subject being identical with that of our own.

Plaintiff's instruction number 8, complained of, told the jury, in effect, that although they might believe from the evidence that .there was negligence on the part of the Baltimore & Ohio Railroad Company, in the operation of its train which collided with defendant's car, nevertheless, if they further believed from the evidence, that defendant's servants were also negligent in the operation of its car, in which deceased was riding, and that the latter's negligence was the proximate cause of the death of decedent, without fault on his part, then the negligence of the employees of the first company would not excuse the defendant from liability for the death of Francis Brogan. The form and substance of this instruction has been approved as good law in *Olsen* v. *Citizens Railway Co.*, 152 Mo. 426, and in 2 Brickwood Sackett Instructions to Juries, section 2028. Moreover, we do not understand defendant's counsel to seriously challenge the correctness of the legal proposition stated in the instruction. Their objection to it is that it does not define "proximate cause". The words "proximate cause", we think, have a well defined meaning, as being the nearest or closest in place or time, and the jury could not have failed to understand the meaning of the instruction without further definition. Besides, if defendant apprehended that the jury might not understand the meaning of these words it was its duty to ask for an instruction defining them, and not there-

after rely on the want of definition as error to set aside the verdict.

Now with respect to defendant's instructions. The action of the court in rejecting instructions numbered 1 and 2, defining the words "highest degree of care", employed in the plaintiff's instructions, to mean only the "utmost care" required of reasonably prudent and skillful persons, in the management and operation of a street railway, of like character, and under similar circumstances, is complained of. We do not see that the defendant could have been prejudiced by the rejection of these instructions. "Highest degree of care" is the "utmost degree of care". The two phrases have the same meaning, and the qualifying words of these instructions are not materially different from those in the plaintiff's instructions referred to. Besides, we think it may be properly said of instruction number 1, that it improperly limits the duty of the carrier to the management and operation of the street car, and does not include its duty to look out for dangers in the way of its passage over the tracks of the other railway. The second instruction is amenable to the same criticism.

The rejection of defendant's instruction number 4, to the effect that before the jury could render a verdict for plaintiff the mind of each member should be convinced, that every material allegation of the declaration had been sustained by a preponderance of the evidence, and that unless each was so convinced the jury could not find such verdict, is complained of. It is contended that by the rejection of this instruction defendant was denied the right to have the jury told that there must be unanimity in their verdict. Unanimity in the finality of a verdict was and is the rule of the common law, and it is the rule in this state, and the jury may rightly be so instructed. It was the rule of instruction number 25, in *McCue* v. *Commonwealth*, 103 Va. 870, 917, cited and relied upon by counsel. If that instruction correctly stated the law, it is not authority we think for instruction number 4, as proposed. We think this instruction would have been misleading, couched in the general terms proposed, for it might have forestalled due and proper deliberations in the jury room or induced the jury to believe that any member of

it might stand out obdurate and uninfluenced by the deliberations or arguments of his fellow jurors, and that it was his duty to do so, though his obduracy might result in a mistrial, and that such was his duty during the entire process of reaching a conclusion. If such could have been the effect of the instruction, which we think possible, there was no error in rejecting it. While jurors must all agree upon all matters which they are required to find, they are not required to reach their conclusions by the same method of reasoning. As is correctly held in *C. & N. W. Ry. Co.* v. *Dunleavy,* 129 Ill. 132, point 16 of the syllabus: "To require unanimity, not only in the result, but also in each of the successive steps leading to such result, would be practically destructive of the system of jury trials." See, also, 1 Brickwood Sackett Instructions to Juries, section 264, and cases cited; Hughes on Instructions to Juries, section 708; Abbott's Civil Jury Trials, (3rd ed.) 782. Moreover, we think jurors as a general rule understand that their verdict must be unanimous, and by instructions 3, 5, and 7, in this case, the jurors were told that the burden of proof was on the plaintiff, and of the necessity of his making out his case by a preponderance of the evidence. How, then, could defendant have been prejudiced by the rejection of this instruction?

Instructions numbered 6, 9, and 15, rejected, on the subject of the preponderance of the evidence, were substantially covered by other instructions given, and there was no error in rejecting them.

It is urgently contended that there was error in rejecting defendant's instruction number 11. It was proposed by this instruction to tell the jury, that if the conductor of the car that was wrecked at McEldowney Avenue could, from his position in the front vestibule of the car, ascertain the approach of trains upon the Baltimore & Ohio Railroad Company's tracks, as well as if he had gone upon those tracks at the crossing, then defendant was guilty of no negligence by not sending him to the crossing before attempting to cross the tracks. It is argued that the only reason that could be urged for rejecting this instruction was that it was negligence on the part of the conductor not to have gone upon the crossing before attempting to cross the tracks with his

car, an erroneous proposition if the duties of the conductor could have been as well performed from his position on the car as if upon the crossing. In the first place we are of opinion that the court could take judicial notice of the fact that such duties could not be as well performed by the conductor at the one place as at the other. Such a proposition is contrary to reason and human experience, and certainly this would be so if the car- was in motion, and producing the noises attendant upon such motion, and if the doors of the vestibule were closed, considerations not covered by the instruction as propounded, and as to all which the evidence leaves them in some doubt. Moreover, at least one of the employees of the defendant company, a conductor, and a witness for defendant, on cross-examination, gave it as his opinion that the danger from approaching trains could be more easily averted, where the hearing was depended upon, by going upon the crossing, than by standing upon the vestibule of the car.

Defendant's instruction number 12, we think, was also rightfully rejected. It relates to the non user of its derailment switch by the defendant company. It was proposed to tell the jury by this instruction that if such switches are not in general use by local trolley roads like that of defendant, defendant was not guilty of negligence in not using that switch. This proposition is based upon the rule that a railway company is not always required to have in use the latest improvements in railroad equipment, referring to *Richmond Railway & Electric Co.* v. *Garthright*, 92 Va. 627. We do not think this proposition meets the objection to the instruction. The derailment switch referred to had been located and installed at a point where if it had been used the jury might reasonably have inferred from the evidence that the accident complained of would not have happened. The evidence shows that it had been previously plugged up and thereby put into disuse, and we think it was a question of fact for the jury to determine from all the evidence, whether the condition at the crossing where Brogan was killed, required the use of that switch, and whether it was negligence on the part of the defendant to have abandoned it. Moreover, there is nothing in the evidence showing that switches of that

character were not in general use, and reasonably called for on roads like that of the defendant.

We are of opinion also that defendant's instruction number 13 was rightfully rejected. It proposed to tell the jury, as an abstract proposition, that the defendant company was not an insurer of the life or safety of the deceased. Without qualifying words this was misleading, for a carrier of passengers is an insurer of the lives of its passengers to the extent that the highest degrees of care and foresight are required of it in order to prevent injury to passengers. And, besides, this instruction proposed to conclude with the general declaration, that if Brogan's death was due to the negligence of the Baltimore & Ohio Railroad Company, and not to defendant's negligence, the jury should find for the defendant. The instruction does not contain the whole law on the subject. It does not properly present the theory of proximate cause sought to be imputed to the negligence of the Baltimore & Ohio Railroad Company; its purpose was to tell the jury that if the injury complained of was due to the negligence of the one and not to that of the other the latter was not guilty. The law is that if the carrier is negligent in the slightest degree, although there is intervening negligence on the part of another, contributing to or proximately causing the injury, the carrier is liable, for the slightest negligence on its part, contributing to the injury, will render it also liable. It must be wholly free from negligence. *Washington A. & Mt. V. Ry. Co.* v. *Trimyer, supra; Kennedy* v. *C. & O. Ry. Co.,* 68 W. Va. 589.

We have examined and considered defendant's instructions numbered 17, 18, 20, and 21, and are of opinion that they were all rightfully rejected, as not being well founded either in law or in fact. Instruction number 18 presented an immaterial issue. Instruction number 23, was likewise rightfully rejected, because not propounding the law correctly on the degree of care required of defendant.

With respect to defendant's instructions numbers 24, 26, 27, 28, 29 and 30, rejected by the court, we see no error. It may be said of these instructions generally, that in attempting to define the relative rights and duties at common law and by statute, of these intersecting railway companies, at a railroad

crossing, their purpose was also to tell the jury that the negligence of the Baltimore & Ohio Railroad Company, if any, in respect to those rights and duties, excused the negligence of the defendant if the negligence of the former was found to be the proximate cause of the injury, no matter that the defendant and its employees were also negligent. The authorities relied upon by counsel for defendant do not support these propositions. *Washington A. & Mt. V. Ry. Co.* v. *Trimyer, supra,* one of the cases cited, is indeed authority to the contrary. The slightest negligence on the part of the defendant, or of its employees, in discharging its duties to its passenger rendered it liable regardless of the question of negligence imputed to the Baltimore & Ohio Railroad Company. In such cases the proposition covered by the instructions rejected have no application.

Lastly, it is complained that the court below rejected defendant's special interrogatories proposed to the jury. We have examined these interrogatories carefully, and are of opinion, that any responses the jury might have made to them would have been inconclusive and immaterial.

But for the error pointed out in overruling the demurrer to the declaration our opinion would be to affirm the judgment. But because of that error we are of opinion to reverse the judgment and to remand the cause with leave to amend the declaration respecting the appointment and qualification of the administrator, and if the issue thereon be traversed by the defendant, to try that issue, if not, to otherwise dispose of the case, in accordance with the rule laid down in *Moss* v. *Campbell's Creek R. R. Co.* and *Crockett* v. *Black Wolf C. & C. Co., supra.*

*Reversed and remanded, for trial on single issue.*