C. F. ROBERTSON *v.* J. C. HOBSON

(No. 7515)

Submitted October 10, 1933. Decided October 24, 1933.
(Rehearing denied December 12, 1933)

*Maxwell, Sayre & Bowers,* for plaintiff in error.

*John Q. Hutchinson, Clay S. Crouse* and *Millard French,* for defendant in error.

HATCHER, JUDGE:

This is an action for damages for personal injuries. The plaintiff recovered a verdict and judgment, and from the latter the defendant secured a writ of error.

The plaintiff, aged seventy-two, was struck by defendant's automobile on the highway about six A. M., February 16, 1932. The morning was dark and foggy. The plaintiff testified that he was crossing the highway from east to west when he saw the automobile about one hundred yards distant, approaching

from the south; that he was then about the center of the highway and stepped "brisker" until he was about two steps beyond the hard surface and to the left of the approaching car; that he turned facing the car and took a step or two when he saw a stray dog, which was accompanying him, run out into the highway from his side; that he stopped and threw the light from a flashlight he was carrying (in his left hand) on the dog to see what would happen to it upon which, in his language, "I never realized another thing. The car just swept me clear off of the earth."

The defendant testified that just prior to the accident he was driving at the rate of from thirty-five to forty miles an hour; that he first saw the plaintiff at a distance of fifty or sixty yards and that a dog was with him; that the plaintiff was approaching the car on the right side of the highway (from defendant's position) carrying a flashlight and with his head down; that the dog was in the center of the highway; that as he (defendant) drew nearer, he veered to the left-hand side of highway in order to pass the man and dog, took his foot off the accelerator and sounded the horn; that the man then looked up and commenced to run "quartering like" across the highway, with his arms outspread and with a light in one hand and a dinner bucket in the other; that he (defendant) "cut" still further to the left ("almost at right angles") and applied his brakes, but the man ran into the right side of the car, and that it was stopped within its length after the collision.

There were indentations in the fender and hood on the right side of the car which defendant testified were made by the impact with the body of plaintiff, his head striking the hood. The right headlight of the car was broken, for which defendant accounted only by conjecture. Plaintiff received contused wounds on the left arm, on the "crest of the left ilium" (rear hip bone) and on the upper half of the calf of the right leg. He had a small abrasion on the top of his head and suffered either a fracture at the base of the skull or a contusion of the brain. The hard surface of the highway at the place of the accident was about nineteen feet in width, with shoulders a number of feet wide. Immediately after the collision the plaintiff was lying unconscious several feet west

of the hard surface and between it and the tracks of the automobile in the berm, etc. The automobile had stopped beyond him, against a fence which is fourteen feet west of the hard surface.

The defendant contends that the physical facts disprove the plaintiff's testimony. It is true that under a strict construction of plaintiff's testimony in connection with the physical facts, injuries on the front of his body rather than on the side, would be expected. But the plaintiff does not attempt to describe in detail either his own physical movements or the course of the automobile after he threw the light on the dog. Lack of detail alone does not discredit him. The jury could well attribute that lack to confusion and to involuntary action which the plaintiff's memory failed to grasp. A reflex turning of his body from the oncoming car would have placed his left side next to the car.

The defendant makes the further contention that he was confronted with an emergency—danger from the dog if plaintiff's testimony be credited, and danger to plaintiff if defendant's testimony be accepted—and that under either view of the evidence he acted as a man of ordinary prudence would have done, and therefore was not negligent. His instructions Nos. 8 and 9B fairly submitted each exigency to the jury. Whether his conduct conformed to his contention is essentially a jury question. "Where a course of conduct adopted in a sudden emergency is alleged to be negligent, the question for determination is not whether the party charged acted according to his best judgment but is whether he exercised the prudence of the average person under the same circumstances; and that question is one of fact for the jury and not one of law for the court." *Carney* v. *Railway,* 72 N. H. 364, 57 A. 218. Accord: *Lavenstein* v. *Maile,* 146 Va. 789, 132 S. E. 844; 45 C. J., subject Negligence, sec. 92. It appears that the shoulders of the highway were as safe for automobile travel as far to the right as to the left, and that defendant knew of that condition. Considering the evidence from plaintiff's standpoint (as the jury did) the defendant, in the exercise of ordinary care, should have been cognizant that plaintiff had crossed the highway to defendant's left and he should have seen plaintiff when he threw the light—from the left—

on the dog. Charging the defendant with that information, the jury was warranted in finding that the exercise of ordinary prudence would have caused him to have veered to the right instead of the left. "The actor's knowledge (in an emergency) is a material fact. The knowledge he would have had, if he had been reasonably vigilant, is chargeable to him and is also to be considered." *Sevigny* v. *Company*, 81 N. H. 311, 313, 125 A. 262, 263. Accord: *Lederer* v. *Connecticut Co.*, 95 Conn. 520, 527, 111 A. 785.

The defendant charges error because his instructions Nos. 10, 15, 16 and 17 were refused by the court.

No. 10 submitted to the jury an emergent situation on the premise that plaintiff "ran into the highway and in close proximity to defendant's car." That premise does not accord accurately with defendant's narrative of plaintiff's actions. An inaccurate hypothesis should not be submitted to the jury. *Hutchinson* v. *Parkersburg*, 25 W. Va. 226. Moreover, No. 10, in effect duplicates No. 8, which was given. "Duplication of instructions is unnecessary and undesirable." *Drake* v. *Hardware Co.*, 110 W. Va. 63, 157 S. E. 35.

No. 15 instructed the jury that the rule requiring the plaintiff to prove his case by preponderating evidence was a substantial part of the law, and that if "the whole evidence is equally susceptible of two interpretations, one of which is consistent with the theory of the defendant * * * then the jury cannot arbitrarily adopt that interpretation which is against the defendant," etc. The hypothesis which the instruction intends to propose is that if the evidence will yield readily to two opposite inferences, etc. But the ordinary usage of the words "susceptible" and "interpretation" does not bear the meaning the instruction would convey, and therefore it would have tended to confuse the jury. Moreover, defendant's instruction No. 2, given, fairly informed the jury of the burden on plaintiff to preponderate. After giving such an instruction as No. 2, a court is not required to instruct further on the many hypotheses relating to the preponderance of evidence which the ingenuity of counsel may suggest. Such matters as drawing two opposite inferences, or deductions, or beliefs from the same circumstance, or same set of facts, or

same evidence can well be left to the argument of counsel before the jury.

Nos. 16 and 17 will be considered together. No. 16 (after again adverting to the requirement that the plaintiff preponderate) stated "while it is contemplated that jurors will harmonize their views in discussing the case in the jury room if possible, yet, the law does not permit jurors to compromise or yield their conscientious convictions for the mere purpose of reaching a verdict." No. 17 follows: "The Court further instructs the jury that each individual member of this panel has a personal responsibility upon him to try and determine the case according to the evidence in conformity with his own conscience, *and if any member of the panel, after hearing and considering all the evidence and the instructions of the Court, and listening to the argument of counsel, and after consultation with the other members of the jury, is not convinced as to the verdict to be rendered in the case, then it is the duty of such juror not to surrender his own convictions or compromise with other jurors, simply because other jurors are willing to compromise and return such verdict.*"

The section quoted from No. 16 is taken from part of an observation on a proper charge to the jury, in the opinion of *Emery* v. *Monongahela,* 111 W. Va. 699, 709, 163 S. E. 620, 624. The part omitted from the instruction is: "It is proper for a trial court to tell the jurors that it is their duty to agree if possible, and that in conferring they should respect each other's opinion with a disposition to agree thereto if based on sound reasoning." The part of the observation omitted is material; and the part used in No. 16, when disassociated from the omitted portion, places too little emphasis on the duty of jurors to consult with and defer to one another and to agree if possible, and tends to forestall proper deliberations in the jury room and to justify obduracy on the part of the individual juror. The underscored portion of No. 17 was adapted from point 2 of the syllabus of the *Emery* case. The same reason which leads us to consider instruction No. 16 deficient impels us to hold that point 2 is incomplete as a statement of what is requisite in such an instruction, and that No. 17 based thereon is likewise incomplete.

We are in full accord with the remarks on this subject by

the Supreme Court of Massachusetts in the leading case of *Commonwealth* v. *Tuey*, (1851) 8 Cush. 1, 3, wherein was said:

"A proper regard for the judgment of other men will often greatly aid us in forming our own. In many of the relations of life, it becomes a duty to yield and conform to the opinions of others, when it can be done without a sacrifice of conscientious convictions; more especially is this a duty, when we are called on to act with others, and when dissent on our part may defeat all action, and materially affect the rights and interests of third parties. Such is the rule of duty constantly recognized and acted on by courts of justice. They not only form their opinions, but reconsider, revise, and modify their own declared judgments, by the aid and in the light of the decisions of other tribunals. But this could not be done, if it were not permitted to them to doubt and correct their opinions, when they were found to differ from those of other men, who have had equal opportunities of arriving at sound conclusions with themselves.

"The jury room is, surely, no place for pride of opinion, or for espousing and maintaining, in the spirit of controversy, either side of a cause. The single object to be there effected is to arrive at a true verdict: and this can only be done by deliberation, mutual concession, and a due deference to the opinions of each other. By such means and such only, in a body where unanimity is required, can safe and just results be attained; and without them, the trial by jury, instead of being an essential aid in the administration of justice, would become a most effectual obstacle to it."

The *Emery* case was clearly reversible on other grounds than refusal to instruct on the unanimity of the jury. See the opinion and also the concurrence of Judge Maxwell. So we regret our incomplete syllabus therein on what is requisite in such an instruction and that the instant defendant should have been misled thereby. An instruction on the unanimity of the jury is ordinarily given as a matter of course. But as was said by this Court in *Brogan* v. *Traction Co.*, 76 W. Va. 698, 707, 86 S. E. 753, jurors generally understand

that their verdict must be unanimous. We cannot conceive that the defendant was prejudiced because he failed to have the jury specially instructed to that effect. We are supported in this conclusion by a line of Virginia decisions commencing with *Sims* v. *Commonwealth*, 134 Va. 736, 115 S. E. 382, wherein a proper instruction on the unanimity of the jury had been refused. The court held: ''The instruction might probably have been given with propriety, but it embodied principles so well understood and so fully covered by the oath of each juror, that its refusal could not be deemed error.'' Accord: *Scott* v. *Commonwealth*, 143 Va. 510, 129 S. E. 360; *Peoples* v. *Commonwealth*, 147 Va. 692, 137 S. E. 603.

Perceiving no error prejudicial to defendant, the judgment is affirmed.

*Affirmed.*