## DENEEN v. BALTIMORE & O. R. CO.
### Civil Action No. 57—M.

District Court, N. D. West Virginia.

Sept. 24, 1946.

Martin & Seibert, of Martinsburg, W. Va., for plaintiff.

J. O. Henson, of Martinsburg, W. Va., for defendant.

BAKER, District Judge.

This case involves an action for personal injuries originally instituted in the Circuit Court of Morgan County, West Virginia, and removed to this Court. It involves injuries sustained at a railroad crossing near the Hancock, West Virginia, station of the defendant. This is a small railroad station directly across the Potomac

river from the town of Hancock, Maryland. At the point of the accident, the railroad company maintains four sets of tracks. These consist of three main line tracks running approximately east and west and a fourth track branching off therefrom in a southerly direction constituting a branch line into some local industries.

The plaintiff lived in the State of Pennsylvania, a few miles north of Hancock, Maryland. On November 20, 1944, he had driven in his automobile through the town of Hancock, across the Potomac river and across the railroad tracks in question in order to transact some business with a man living a few miles south of the crossing. When he reached this crossing, upon his return journey, he found a freight train traveling in an easterly direction on the middle of the three main line tracks. The automatic signal bell at the crossing was ringing. He crossed the branch-line track and stopped his automobile between it and the south main track. After the freight train had cleared the crossing, he started his car forward and was struck by a passenger train also going in an easterly direction upon the south main line track. The main line tracks at this point are on a curve and one standing in the position that the plaintiff occupied while waiting for the freight train to pass had a limited view both up and down the main line tracks. At the time of the accident, the passenger train was being drawn by a diesel locomotive. It was stipulated by the parties that the crossing is a "public highway crossing" and that the passenger train, at the time the engineer applied his brakes, was going at a speed of fifty-five miles per hour.

The case was tried before a jury which found a verdict in favor of the plaintiff in the sum of Three Thousand Six Hundred Dollars ($3,600). The defendant seasonably filed its motion to set aside the verdict because (a) the evidence did not show any primary negligence of defendant and (b) the evidence showed contributory negligence of plaintiff as a matter of law. The plaintiff's description of the way the accident occurred beginning on page 17 of the reporter's transcript reads as follows:

"Q. Was that between the, what is called the Berkeley Springs branch, and the main line railroad? A. It was.

"Q. And you testified to this freight train going east. Was that coming from your left and going to your right, or how was it going? A. Coming from my left, going to my right.

"Q. Was there a warning gong or bell at that crossing? A. There was a bell ringing.

"The Court: What was that?

"The Witness: There was a bell there, a bell ringing. When that train passed, that bell rang on until it passed down the track, I'd say a hundred feet or a hundred and fifty feet, the bell quit ringing.

"Q. You are now talking about the freight train which was going east? A. That's right.

"Q. On the middle track? A. That's right.

"Q. There are three sets of tracks at that crossing? A. That's right.

"Q. And after this train had gone east, this freight train, you waited until the bell had stopped, did you? A. I let the train go out of sight. The bell had quit ringing when the train went out of sight, I couldn't see it no more—I was on the inside curve; the train was right around the bank on the curve, this train.

"Q. And after the bell had stopped then and the freight train had gone out of your sight, what did you do? A. Pulled up and started—pulled up on the crossing to cross; just when I got up on the first set of tracks on the main line the bell started ringing. The tracks were in front of me, and I didn't know which way the train was coming—the bell rings both ways —and I tried to back off the track and didn't get off.

"Q. Why didn't you get off the track? A. In the first place, I don't think I had time, hardly, to get off, the speed the train was coming, and I was far enough off that the train hit the automobile right in the center of the front—the right-hand front wheel on the crossing there, diagonally across those tracks, and as I can remember,

as I figure that out, when the right-hand wheel came to the rail it dropped in a hole and stopped my car. I think that my car was standing stock still when the train hit it.

"Q. Mr. Deneen, you testified that you went up on the track to cross. Did you do anything before you went up on the track? A. I looked to see both ways to see nobody was coming.

"Q. You listened again for the bell, did you not? A. I did not listen for the bell. It hadn't been ringing, wasn't ringing when I started to pull up."

The plaintiff's version of the accident is in all essential details corroborated by the witness Aulabaugh. It is also, in a number of its essential features, corroborated by witnesses for the defendant. Several facts were either admitted or so positively established as not to permit of doubt. Among them were (1) Deneen stopped his car south of the south main line track while the freight train was passing on the center main line track and as close to said south track as safety permitted (2) Deneen did not start across the crossing until the freight train had cleared the same (3) the warning bell rang before Deneen was struck. The defendant contends that the accident was not caused by its negligence and that there was not sufficient evidence of such primary negligence as to justify submission of the case to the jury.

■ It is, of course, Hornbook law that a plaintiff in any personal injury action must establish negligence upon the part of the defendant. The mere fact that an accident happened and injuries resulted does not of itself impose liability on the defendant. The Court submitted to the jury certain questions regarding alleged negligence, that this was error is the gist of the present motion.

■ In the first place, we may concede for the purpose of this motion that the engineer of the defendant's locomotive gave the signals and warnings required by the Statute of West Virginia. However, I do not believe that meeting the mere statutory obligations absolves the defendant from liability, if, under all the surrounding circumstances, they would not adequately warn a traveler using the highway and if this fact was known or should have been known to the defendant. This crossing is an extremely dangerous one. It is on a curve and a rather narrow highway, crosses three tracks, all of which are used by the defendant for the operation of highspeed trains. According to the plaintiff, it was a cloudy, foggy day with poor visibility. The engineer of the train was bound to know of the crossing and the dangers inherent thereon. Of course, the dangerous situation placed a duty upon the plaintiff to use care for his own safety commensurate with the danger, but it also required the defendant to operate its trains in a manner to reasonably safeguard the public at that particular place. I read with great interest the defendant's careful and exhaustive brief and the quotations from the cases cited therein. The question of what is or is not negligence under circumstances such as we were dealing with is not a matter that can always be determined with mathematical precision. Under certain conditions a given set of warning signals would be so obviously sufficient as to relieve the defendant from any burden and another set of warning signals would be so obviously deficient as to make out a case of negligence as a matter of law, but between the two there is a set of conditions and circumstances where the question of negligence should be submitted to the jury. I felt that this case came within the latter classification. See Pokora v. Wabash Ry. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049; Arrowood v. Norfolk & W. Ry. Co., W.Va., 32 S.E.2d 634.

■ I also felt that there was sufficient evidence that the condition of the crossing proximately caused the accident to submit that question to the jury. In this connection the plaintiff's testimony was substantiated by the witness Widmeyer wherein he said in answer to the question "what was the condition of the roadbed of that crossing during the month of November, 1944" (answer) "it was very rough, chuck holes in it as wide as twelve inches wide and six inches deep where that gravel worked out of the boards up there" and the witness Aulabaugh who said "the cross-

ing was terrible, there was no question about that." It is my opinion that with the plaintiff's own testimony so strengthened it was a question for the jury to determine whether or not his car as he said "did get stuck in a chuck hole on a crossing" and this fact caused his injuries.

 The second ground of the defendant's motion, namely, that the evidence showed contributory negligence by the plaintiff as a matter of law, to me seems easier of solution than the first ground. Taking the plaintiff's own story, he found himself upon the first of the three main line railroad tracks with two more tracks still to cross in their entirety when the warning bell started to clang. He had no way of knowing upon which of the three tracks the train that had activated the bell was coming. Even when he saw the train it is doubtful if he could have immediately determined upon which track it was traveling because it came around a curve toward him. I am inclined to agree with counsel for the railroad company that if he had, when he first heard the bell, proceeded straight ahead he would have safely crossed the crossing and no injuries would have resulted; but he found himself in an emergency, and the fact that in this emergency he adopted one of two or more possible expedients to extricate himself therefrom and his choice later proved to have been an unwise one, does not make him liable for contributory negligence. One, who through no fault of his own, suddenly finds himself in a place of danger is not required to exercise the same degree of care and caution as one who has ample opportunity to apply his reason and judgment; he is only required to exercise the same care as would an average person under like circumstances. See Robertson v. Hobson, 114 W.Va. 236, 171 S.E. 745; Schade v. Smith, 117 W.Va. 703, 188 S.E. 114. Counsel for the railroad company, while impliedly admitting this rule, contend that the same is not applicable here because, they say, the emergency was induced by the plaintiff's own act, and cite Huddy on Automobiles, Volume 7-8, Section 6, page 30. I do not believe that the exception noted by Huddy is applicable to the facts in the present case.

The only thing that the plaintiff did to place himself in the dangerous position was to start across the track at a time when it was apparently clear and when no warning signal was sounding. To hold that under these circumstances he had voluntarily placed himself in a dangerous position would amount to holding that anyone crossing a railroad track at a public crossing at any time surrenders the benefit of this rule of law. Bearing in mind that we must for this motion resolve all conflicts in the evidence in favor of the plaintiff, I feel that the emergency rule did apply.

There is also, of course, the fact that we have no way of being sure that the plaintiff's stopping and attempting to reverse caused his injury. It may have saved his life and the jury may have so found. The contrary proposition that had he continued he would have avoided the accident altogether is not sufficiently certain to warrant us in assuming that it was the attempted reversing of the car which caused the accident.

As to the defendant's alternative motion to set aside the verdict and grant a new trial, I feel that the same should be overruled for the reasons set forth above.